May it please the Court, Laurel Haig on behalf of the appellant. I saw you outside, didn't I? Yes, you did. Yeah, you had to take your shoes off. That's correct. Because you're dangerous. That's right, I'm very dangerous. The marshals were worried about you. Okay. So, as I see it, the issue presented before the Court at this time was, did the lower court commit error by dismissing the complaint with prejudice for failure to state a claim upon which relief could be granted? And the answer, at least in our minds, on behalf of appellants, is simply yes, the trial court did err. The ruling of the lower court is that all of the nine causes of action were preempted by the LMRA, and I think that's an incorrect ruling. I think when you look at the various claims, you need to examine whether or not they were either directly relevant to or substantially dependent upon the collective bargaining agreement or the terms of the collective bargaining agreement. And I think with respect to all of the claims, they were not substantially dependent or directly relevant to. The analysis of the various claims, the fraud-based claims, IAED, wrongful termination, age discrimination, are independent of the collective bargaining agreement. There were various promises made to the appellant Eddie Romero back in 1993 that he would have a pension created. And, in fact, he relied on that promise that a pension would be created and continued employment at San Pedro Forklift. As time continued on, assurances were made that a pension had been created. In fact, he was presented a document that showed that he had a pension. When shortly before his termination in 2004, he inquired about his status of his pension and how much was actually in his pension, he was then told that there was no such pension, in fact, in place, and keep your, you know, don't complain about it, and various threats. And then shortly after it was terminated, based on his complaints of the fact that there was no pension, and then based on complaints of age's comments made. All of those various factors and factual inquiries are independent of the CBA. I want to ask you specifically about the promissory estoppel claim. The promissory estoppel claim, as I understand it, and you correct me if I haven't got my facts right, will you, predated the collective bargaining agreement, and your client says, the defendant promised me that I would have a pension, correct? That's correct. And then the collective bargaining agreement comes into effect, and it specifically states there will be no pension. That's correct. So the issue of pension is spoken to by the collective bargaining agreement. So I have a question. Why isn't that case preempted? Well, I think... It's one of the cases. That may be the only case preempted. Why isn't that case preempted? Why is the promissory estoppel not preempted? Well, I think that there are various cases that discuss that issue where, and I'm sure I'm going to butcher the name, I believe the Newhouse case, as well as other cases where there was an agreement made prior to the collective bargaining agreement. There was, I think it was, he was, the appellant was a union employee and then moved into a management position, and there was a collective bargaining agreement in effect at the time that said you have a right of return. He moved into the management position, and he was in that position, I believe, for almost 10 years. During the interim, there was also another new collective bargaining agreement that said no right of return. So when he tried to return back to his union position, I believe the president said, Sorry, you're out of luck. There's a collective bargaining agreement in place. And the court looked to the fact that the assurances were made prior to the new collective bargaining agreement. And, in fact, that it's not a breach of contract claim that I'm discussing. It's an independent agreement that was made. So you don't need to even look to the CBA. Or even if you do look to the CBA, no interpretation is actually needed. And, in fact, we don't dispute any of the terms in the CBA. It's that there's an independent. Would you agree that if the collective bargaining agreement had said, on behalf of all the workers, any claims that they have outstanding based on any other promises made or any agreements made are hereby merged and forever withdrawn and released, then that would be different, wouldn't it, if it had an integration clause, in other words? Perhaps. Did the CBA have an integration clause? My understanding, it didn't. I think so. Your Honor, did I effectively address your question, or did I dodge the question? Your position is that this was independent, and you don't need to interpret the collective bargaining agreement. But I don't know that that's the crucial issue. It seems to me that, for example, if the collective bargaining agreement covers the matter, I mean, it's clear there's no pension here, that may be enough. That's what I'm concerned about. What case do you primarily rely on that there would be no preemption? I rely on several cases. The Newhouse case. Is that in your brief? Yes, it is. Okay. Would you like the citation? Well, if it's in your brief, I'll get it. Okay. And I rely on the Beals case. Which one? Beals v. Kiewit, also identified in the appellant's opening brief. And I think with respect to the Beals case, it goes to the issue of what I believe you're talking about as well. The appellant acknowledged that there is a CBA, does not dispute the fact that there was terms in the CBA that were contrary to the terms made to him as an individual. And he attempted to file a lawsuit both based on breach of contract and I believe a negligent misrepresentation claim. The court held that in terms of the breach of contract, there were disputing facts. So CBA says one thing, independent agreement says another thing, breach of contract is preempted. However, when the court looked to the negligent misrepresentation claim, it said that's separate and apart. That was an independent agreement. He relied on the representations made to him, albeit in controversy or in direct contrast to what was in the CBA. But nevertheless, there was a reliance. So it's a fraud-based claim. And the issue of whether or not that reliance was justifiable, that's an issue. Kennedy, are you drawing a distinction between preexisting tort claims which survive the CBA and preexisting contract claims which do not survive the CBA? Because promissory estoppel is a contract claim as far as I'm concerned, promissory estoppel being a substitute for consideration, right? Correct. Now, are you saying under this Buells case that if it's a contract claim entered into before the CBA, it does, it is preempted? I think what my understanding of what the Buells case says is that the CBA was in effect at the time that the independent agreement was made. That's different. So that's what the distinguishing factor was. Well, let's say you succeed on your other claims. You've got about eight or nine. Do you need the promissory estoppel claim? Is that essential? Well, Your Honor, because the case was thrown out at such an early stage, at this time, I mean, I would say that we need all of our claims to be intact because we haven't had a chance to significantly litigate the case. Let me read you from a very recent case. No, it's not very recent. It's a 2003 case. It's an unpublished opinion, which may make a difference, called Somerville v. Local 817. It's 64 Federal Appendix 42. I don't know if you have that case or not, but anyway, here's what the case said. Where an inconsistency exists between the collective bargaining agreement and an independent contract, the collective bargaining agreement necessarily controls, and the contract claim is preempted. And that was the case where it dealt with a job position, which was specifically governed by the collective bargaining agreement. So it was covered in there, and we're talking about something that is not covered. In other words, there's no pension. And your position is that there's no pension, and you're claiming your pension under a separate agreement, that that is not preempted. Well, that's correct. We're asserting that he provided various assurances, and that's based on the fraud-based claims. If this were a fraud-based claim, which maybe it is, you don't have a problem. But here, you're basing it, a promissory estoppel is essentially a contract claim, not a tort claim. Yes. Okay. May I move on to the age discrimination claims, or do you have... Okay, so I'll move on to the age discrimination. I think that the lower court, based on my reading of the transcript, stated that all claims were preempted by the LMRA, and I think the Ninth Circuit identifies that claims anti-discrimination statute effectively takes care of the claims, and they're not preempted by the LMRA. So any sort of age discrimination, race discrimination, which is not the case here, we just have age, but that it's not preempted. And it's based on, I believe, a different deal case, where the court found that the LMRA did not preempt discrimination claims because they were not inextricably intertwined with the CBA. Yeah. I think that as far as your claims are concerned, that, you know, my sense is, is that the only one that might be considered preempted would be the promissory estoppel. I think it's safe on the others. I'm sorry. I didn't hear the last part. I think you're safe on the others. Okay. Thank you, Your Honor. So why don't we hear from the forklift? Thank you, Your Honors. Good morning, Your Honors. I would please the Court, Ernest Franceschi, for the defendant appellees. I want to raise a point that hasn't really been discussed too much. In the motion that we made for dismissal under 12b, one of the grounds that we stated was that these claims are time-barred. Mr. Romero has been employed under four separate collective bargaining agreements, dating back to 1995. And here we are, 10, 11 years later, he's bringing a lawsuit when the very first collective bargaining agreement clearly says no pension in 1995. And he signs on to it, and it's in the record, I believe, at the ---- But his claim is he went to Oregon in 1989, and the promise was made in 1993. So they preexist all the collective bargaining agreements, correct, Mr. Franceschi? Correct, Your Honor. So assuming that a breach occurred with the first collective bargaining agreement that's dated October 14th, 94, and that's at page 114, it says no pension, the cause of action would accrue then. At that point, he was on notice, and he signed it at page 132. Did you argue the statute of limitations? Yes, we did, Your Honor. That's in the record. It's in the motion. The judge didn't decide it on that basis. No, he didn't, but ---- You want us to decide it on that basis? Well, I think if it can't be maintained as a matter of law, this Court can affirm on any grounds. Well, I know that, but I'd say we're sort of reluctant to do that. I understand that, Your Honor. But the point I'm making here is that these claims are very, very old, very stale, even the tort claims. Assuming that this ---- Well, how long did he work for your client? Started in ---- Then that collective bargaining agreement came into effect. No, no. When he says the promise was first made. Well, he says we don't know when the promise was first made. That date's never ---- When did he say the promise was first made? It's never alleged in the complaint. It's unspecific. So what was the first day he went to work for your client? Sometime in 1993 or 1994, prior to the first collective bargaining agreement. He was working there before the collective bargaining agreement was in effect. Let me ask you this, Mr. Franceschi, because this comes out of left field, as far as I'm concerned. In your brief, did you argue the statute of limitations was a ground for affirming the decision by Judge Reel? Yes, we did, Your Honor.  Under 301, there's a six-month limitations period, which ---- But 301 assumes that there is preemption. But did you argue the statute of limitations on the State claims? No, we didn't, Your Honor, because Judge Reel ---- Well, then what are we talking about? Well, Judge Reel found there was preemption. Well, under State law, it's four years' written contract. But Judge Reel gave this whole thing two minutes, right? Well, that's what Judge Reel does. Yeah, I know. And that's why we're here to undo it. Well, that's correct, Your Honor. Yeah. So I don't know what went through his mind. I've known him for years and years and years. He's a nice fellow. He's a good person. I like him. But so he didn't go into any of these issues. He just ---- Well, I think it's painfully obvious, Your Honor, that the gravamen of the claims ---- There's nine causes of action. I mean, you can call things anything. You can label them anything you want. Gravamen or gravamen? Well, I say gravamen. Some people say ---- Probably better, yeah. In any event, tomato, tomato. Yeah. We're talking about the basis of the claim, Your Honor, is that Mr. Bailoff allegedly defrauded him by promising that he was going to have a pension. That didn't happen. All these claims come back to that. They're all based on that. When did Friend Romero file his lawsuit? 2005. 2005. Ten years after the fact. So what you're saying is that he should have known by 1994, when the first collective bargaining agreement was entered into, that since the collective bargaining agreement said no pension, he wasn't going to get any pension. Yeah. Regardless of what the owner of the place told him when he hired him back in 1989 or told him in 1993. And why would he know that? Because it's right there in black and white. It's in black and white that the CBA says you won't get any pension from the agreement entered into between the union and the company. Does it also say, and by the way, Mr. Romero, you're not going to get any pension from the promises made to you back in 1993? Does it say that? Well, first of all, Your Honor. Yes or no? It does not say that. No, it didn't think so. But there's something called the peril evidence rule. If somebody says, you know, you're going to get a pension, and then you get the CBA that says no pension, that's not admissible. I mean, maybe he might be under the bizarre impression that Mr. Baloff is a man of his word and is going to pay him on the side. Well, Your Honor, first of all, Mr. And this is a 12B motion, so there is no factual or taking of evidence. Right. But Mr. Baloff never promised him or anybody else a pension. That's not what Mr. Romero says. Mr. Romero says he not only promised me a pension, but he showed me a document saying, here's your pension plan, which I will contribute to when you retire. You'll get it. Well, it's not in the complaint. I haven't seen any such document. It's not in evidence here. It's not in the record. Well, of course it's not in evidence. There are not many things in evidence in a 12B6 motion, are there, Counsel? That's true, Your Honor. But if he's basing a contractual right based on some alleged piece of paper that Mr. Romero has, I would think that would be part of the complaint or attachment. A complaint? You say you have to plead evidentiary facts? No, Your Honor. But at least it would be to strike. Come on. He filed in State court, didn't he? You plead evidentiary facts, that's a motion to strike. Well, Your Honor, the only thing that really exists from a contractual standpoint here is the CVA. That's the only document. Right. That's what your client would like, yes. Well, Your Honor, it's a fact. It is a document. And Mr. Romero signed on to it. We see a signature. When did Romero, when did he finish, complete his employment with your client? I believe he left in 2004. Left. He got fired because he was complaining about not getting a permit, I mean not getting a pension, and because he was over 40 years of age, according to his allegations. Right? No. Mr. Romero was never fired, and he was replaced on the age discrimination case. He was actually replaced with an older worker when he left. Those facts are not before us, nor were they before Judge Reel. We're talking about the allegations of the complaint. He worked from 89 until 2004. Then he left the employment, and then he filed his action in 2005 within a year, right? When he found out he didn't have any pension plan. He knew for the preceding 10 years he didn't have a pension. That's your burden of proof. So each and every collective bargaining agreement, and it's in the record, we see his signature agreeing to the terms. He signed four times in 10 years on four different agreements where there's no pension. And now he comes to this Court and says I've been defrauded? That's patently unbelievable, Your Honor. Was there an integration clause in the CBA which said that all prior claims of any No, there isn't, but it doesn't have to be as a matter of law. And the case that says that is? Well, Your Honor, there's a couple cases that we cite in our brief, and this relates to fraud alleged against the employer in making promises that aren't in the CBA. There's the International Union United Auto Aerospace workers case, Eastern District of Michigan, 434F sub 331. I understand it's not controlling in this circuit. It's not even controlling in that circuit. Well, the reasoning here is pretty clear. There's a very strong federal public policy. These are issues of substantial federal concern. And any allegations of fraud or impropriety in the negotiation, the implementation or the creation of a collective bargaining agreement are matters of exclusive federal concern. Mr. Romero isn't alleging that there was fraud in the negotiation or creation of the collective bargaining agreement. He's not saying my union sold me out. He's saying I had a deal with Mr. Bailoff earlier, and the company should honor it. That's not what Mr. Romero's alleging. Mr. Romero's alleging that Bailoff promised him a pension. Right. And he showed him some document that says you're going to get a pension, which we've never seen. And then he signs on to four separate collective bargaining agreements that say you're not getting any pension. Now, at that point, when the first one came along, wouldn't a reasonable person who's been promised a pension go to Bailoff and say, hey, Mr. Bailoff, you promised me a pension? We don't know anything about Mr. Romero. We don't know what his educational background is. We don't know what his relationship was with the owner of the company and all that. He was there for a long time. Those things can happen. Come work for me. You're a hard worker, and I'm going to take care of you, and we're going to have a pension for you. Here's a piece of paper. And, you know, try to read some of these things. They're not so easy to read and all the rest of it. So let's say he saw that in there. He still believed that he had faith in the owner of the company. I mean, that's the way working people are. They don't go around and say, hey, look, what are you doing to me? You know, you put this in there, you promised me this, and then the next thing you know they're worried about whether they're going to have a job tomorrow. Well, we know one thing. Mr. Romero can read and write. He read the collective bargaining agreement and signed his name to it. You know, you can argue all you want, but here I'm a judge here, and I'm looking at the briefs. You've got a 12 v. 6, and the only question, I'm not going to decide the merits of this case. You may win, you may lose. All that's before me is whether or not the district court was right in saying all these claims are preempted. Well, the only one that I think may not be preempted, and you just have to answer this if you wish, is the question of the promissory estoppel. That's a contract claim, and I want to know why that claim is or is not preempted. What do you say? Well, I'm saying even if there was a promise. Answer that question. Is that a preempted claim? It is, Your Honor. Why? The subject matter of pensions, the entire subject matter is exclusively a federal concern, which is governed by Section 301. That's true, but as I read the cases, it's a question of conflict. Does the CBA and the state claim conflict? And here there's no conflict. You don't have to look at the CBA. The CBA is clear, no pension. So in deciding this case, we don't have anything to do with the CBA. So tell me why under the Ninth Circuit law it's not preempted. Well, why? Yeah. I don't think it is preempted, or it may not be preempted. Well, let me answer your question very directly. When he saw that there was no pension provided for, he has a remedy, and the remedy is to seek a grievance, to file a grievance and seek arbitration through his union. That was his remedy. How could he seek arbitration through his union when there's nothing in the contract? The union only enforces the CBA. The union says, what are you talking about? No pension under the CBA. You've got a state claim. That's different. Well, that's the forum to address it in because this goes to the formation of the CBA. Why? Why? I mean, he's, what I gather here, his boss said, Romero, you know, come over here and work, and I'm going to set up a pension plan for you. You know, and you don't have anything to worry about. I like you. You're a hard worker. I need you. I want to take care of you. Okay? And then other things happen. He's supposed to go then see that and then run to the union and ask for arbitration on that issue? Well, he. It doesn't work that way. Here's the point, Your Honor. He's got faith in this guy. He worked for him for how many years? A dozen years? No, no. At this point in time, he's only been there for maybe less than a year before the first collective bargaining agreement kicks in. But let's assume all this is true. Let's say that this. You know, these are all matters for the trier of fact. Well, not really, Your Honor. Look, let's cut to the quick on this. This is a case that takes a lot of time to go over, one issue after another. We've done that. You know, my sense is that the only matter that we've got some concern about is the promissory estoppel. The others, my sense, and we don't talk about these things before, is that as far as these other issues are concerned, there's no preemption. So just don't spend any more time on that. It's going to go back. And the question is, what do we do about promissory estoppel? And, I mean, the judge here just gave this thing what we call the short shrift. You know what short shrift means? Yes, Your Honor. And I think, in my mind, this is about as clear a case of entire preemption, except for the discrimination claim. I concede that is not preempted. And I think Judge Real, when he said everything's preempted, I don't think he really meant that, because that's clearly a state law claim. But then there's the other issue. But you say, Your Honor, you're making a mistake, you know. Well, I knew he made a mistake, and that's why I told him on the record, that oral argument there, that this is a remaining state. You found everything else is preempted. So you have the discretion now to dismiss that for want of federal jurisdiction. Well, how does the emotional distress claim be preempted, or the age discrimination claim, or the fraud claim? How does all that get preempted? Well, the fraud claims and the emotional distress, I believe, relate to this issue of no pension. I think those are all inextricably intertwined with this collective bargaining agreement. The only thing that's clearly separate is the age discrimination claim. And that claim was dismissed without prejudice. Mr. Romero could have filed in state court 30 days or within 30 days of the dismissal. He didn't do that. And I think he's barred at this point. Okay. You've still got two minutes and 23 seconds, and we'll give you credit for it. You can use it in your next argument before. Okay. Thank you, Your Honors. All right. If I just may make one last point with respect to the promissory staff. I think the important factor is that my client, who actually was employed for over 15 years, he began employment in 1989, and the promises were made to him in 1993 before the collective bargaining agreement was enacted, I think in sometime late November or December of 1994. So the promises did precede the collective bargaining agreement, and I think that should be a factor in your determination of the promissory estoppel. I think your position has to be if this case were tried on the merits, neither party would have the issue would be was there a promise made, because everybody agrees that you don't go to the collective bargaining agreement to determine that. And correct? That's correct. The question to me is if it can, and I don't know if it's really answered any of these cases. It may be. If the issue could have been in the collective bargaining agreement but was not, is that a preemption? If the issue, you mean with respect to the pension? Yes, if the collective bargaining agreement could have granted pensions rather than. Oh, I think that the case law actually shows if there was a separate promise made that you could still file a suit, and it would not be preempted based on. Okay. Yes. Thank you. Thank you very much. Thank you, Your Honor. All right. That'll be submitted. Appreciate the argument. We'll come to the next case, Duarte v. Bardalas. Thank you.
judges: Pregerson, Bea, Bright